# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEFF YOUNG, a married man, | No. 58257-1-II |
| Appellant, | |
| v. | |
| CITY OF PORT ANGELES, a municipality, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, C.J. — In September 2022, Jeff Young filed a complaint against the City of Port Angeles (the City) for damages related to wrongful termination. Young's process server went to city hall to deliver the summons and complaint to the city manager. But city hall was closed to the public due to ongoing COVID-19 restrictions and the process server was denied entry to the office of the city manager. An administrative assistant from the office of the city manager came to meet the process server, read through the summons and complaint, kept them, and returned to the office. Soon thereafter, the City filed an answer to Young's complaint and alleged that Young failed to properly serve the summons and complaint upon the City. Young never attempted to re-serve the City.

The City then filed a motion for summary judgment dismissal of Young's claims. The trial court found that it did not have personal jurisdiction over the City because service upon the City was insufficient as it failed to comply with the statutory requirements for service upon a

municipality under RCW 4.28.080(2) and the city's municipal code. The court granted the City's motion for summary judgment and dismissed all of Young's claims.

Young now appeals, arguing that he substantially complied with service requirements, in part because of the COVID-19 restrictions in place at the time of service. The City responds that because the statute names a specific person to receive service, serving anyone other than that named person is insufficient service as a matter of law, and, thus, substantial compliance is insufficient.

We agree with the City and affirm the trial court's order on summary judgment dismissing Young's claims.

FACTS

Jeff Young is a former employee of the City. He was terminated from his employment in September 2019. In response, Young filed a complaint for damages for wrongful discharge, intentional inflection of emotional distress, negligent infliction of emotion distress, and violation of ch. 49.60 RCW and ch. 49.44 RCW. [1]

In September 2022, Karen Unger, Young's attorney, sent her legal assistant and process server to city hall to serve the city manager with the summons and complaint filed on behalf of Young. At that time, city hall was closed to the public, with signage that directed members of the public to enter through the main entrance only. A desk was set up in the main entry way that prevented public access to the building, including the office of the city manager.

---

[1] Chapter 49.60 RCW encompasses Washington's Law Against Discrimination, whereas chapter 49.44 RCW outlines employment law violations and prohibited practices.

When the process server entered city hall as directed, she explained to the person at the entry way desk that she was there to serve the city manager. The desk attendant denied the process server access to the building and told her to wait while the desk attendant made a phone call. Soon after, an administrative assistant came to the desk from the restricted area of the building and took the summons and complaint. The process server watched the administrative assistant review the documents, keep the documents, and return to the restricted area. The process server explained that "[a]t no time did [the administrative assistant] indicate that she was not the 'right person' to accept these documents and appeared to be the relevant individual to receive these documents, as there was a Notice of Appearance and answer filed in this case soon after they were received by [the administrative assistant]." Clerk's Papers at 17.

After delivering the paperwork to the administrative assistant, the process server returned to Unger's office and described what occurred. The assistant then immediately returned to city hall to confirm that "the only way [she] could serve the appropriate person was as [ ] described above." *Id.* The assistant was told that she could not enter city hall to go to the office of the city manager herself.

The City filed an answer to Young's complaint by the end of September 2022. In its answer, the City alleged that the summons and complaint were never properly served upon the City. Young never attempted to re-serve the City.

In April 2023, the City filed a motion for summary judgment dismissal of Young's claims. In it, the City again affirmatively alleged that Young never properly served the summons and complaint upon the City. The City argued that summary judgment was proper as Young's failure to effect proper service deprived the court of jurisdiction.

In May 2023, the trial court heard oral argument on the City's motion for summary judgment. The City stated that it was requesting dismissal of the case based on lack of personal jurisdiction, again arguing that Young failed to comply with the statutorily mandated method of service for service on a municipality. Moreover, the City argued, Young ignored the notice of the City's affirmative defense when the City timely answered Young's complaint and informed Young of the improper service. Unger argued that on behalf of Young, she "did due diligence" and was not sure what other due diligence she could have done because the process server was prevented from going to the office of the city manager and the administrative assistant at city hall presented herself as a representative of the city manager, took the papers, and read them. Rep. of Proc. (May 26, 2023) at 4. Unger also argued that she did not believe that she had the obligation to re-serve the City when there was a defense raised in the pleadings.

In response to Young's arguments regarding the validity of substitute service, the trial court articulated that "the [countervailing] principle here is the statutory authority . . . and the case law that says that when it comes to serving a city or municipality, that analysis for substitute service just does[ not] apply." *Id.* at 7. Unger replied "in this . . . particularly unusual situation because of [COVID] . . . what were we supposed to do?" *Id.* Unger then argued that the statute authorizes a representative of the city manager to accept service as a designated agent. The trial court responded that "the statute does [accept this method of service] but the municipal code does not," to which Unger replied, "how then [was I] supposed to serve [the City?]." *Id.* at 8-9.

The trial court ultimately granted the City's motion for summary judgment and dismissed all of Young's claims on the finding that the court lacked personal jurisdiction over the City. The court reasoned that "the legal principle still stands that [RCW 4.28.080(2)] is a strict compliance

4

statute. . . . [T]here are no exceptions that [the court had] been able to identify, . . . to the legal requirement of service." *Id.* at 9. However, the trial court did express that "it[ is] never the Court's preference to dismiss a case without giving it the opportunity to go to the merits, but in this case [the court] fe[lt] constrained." *Id.* at 10. It further stated that this case was "a difficult circumstance given some of the . . . physical impediments that [were] in place at the City Hall" but that the court could not look past the clear legal guidance on this issue. *Id.* at 10-11.

Young appeals, arguing that the trial court erred in granting the City's summary judgment motion and dismissing all of Young's claims based on the finding that the court lacked personal jurisdiction over the City as a result of improper service of process by Young.

ANALYSIS

Young argues that the trial court erred in granting summary judgment and dismissing Young's claims because it failed to find that Young substantially complied with RCW 4.28.080(2) as it allows for this type of substitute service. As part of this argument, Young broadly argues that the trial court failed to consider (1) RCW 4.28.080(2); (2) Young's arguments regarding substantial compliance with service of process; and (3) the impact of COVID-19 restrictions that existed at the time. Specifically, Young contends that the city manager's administrative assistant is a designated agent of the City and therefore, that service was properly made upon the City via personal agent to a designee during normal business hours as permitted by RCW 4.28.080(2).

The City responds that Young's service upon the city manager's administrative assistant was insufficient to constitute proper service as a matter of law because RCW 4.28.080(2) names specific people who may receive service, and that statute, in addition to Port Angeles Municipal Code (PAMC) 2.76.020, limit those people to the mayor, city manager, city clerk, or named party

in a complaint. Here, per the City, there were no designated agents authorized to accept substitute service. The City further contends that Young's arguments related to any inability to personally serve one of the appropriate parties are unsupported.[2]

We hold that the trial court did not err in granting summary judgment to the City and dismissing Young's claims on the grounds that the trial court had no personal jurisdiction over the City due to improper service of process. Young failed to comply with the statutory requirements for serving a municipality when his process server left Young's summons and complaint with the city manager's administrative assistant and therefore service was insufficient.

A. Legal Principles

We review a summary judgment order de novo and "engage[ ] in the same inquiry as the trial court." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In evaluating whether there is a genuine issue of material fact, we "consider only the issues and evidence the parties called to the trial court's attention on the motion for summary judgment." *Hiesterman v. Dep't of Health*, 24 Wn. App. 2d 907, 913, 524 P.3d 693 (2022), *review denied*, 1 Wn.3d 1020 (2023). Generally, the sufficiency of service of process is a question of law reserved for the trial court. *Harvey v. Obermeit*, 163 Wn.

---

[2] Specifically, the city states that no evidence supports the contention that Young did not have access to the city manager, as the process server did not "specifically request[ ] that the city manager appear to accept service." Br. of Resp't at 8. Moreover, the city argues, "[t]here also is no evidence that Young's process server was denied access to the two other designated entities upon whom proper service could be effected -- the [city] clerk and the mayor." *Id.* The only evidence in the record to the contrary is that after she delivered the paperwork, the process server returned to city hall and was told she that could not enter city hall to go to the office of the city manager herself.

App. 311, 327, 261 P.3d 671 (2011). Thus, we review de novo whether service of process was sufficient. *Scanlan v. Townsend*, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014).

Proper service of process is necessary to invoke personal jurisdiction over a party. *Id.* When service is made against a municipality, RCW 4.28.080(2) provides that the summons may only be served by delivering a copy thereof "to the mayor, city manager, or, during normal office hours, to the mayor's or city manager's designated agent or the city clerk." The city's municipal code, however, is more restrictive than RCW 4.28.080(2).[3] Pursuant to PAMC 2.76.020(B):

> Service of process in accordance with RCW 4.28.080(2) upon the Mayor, City Manager, or the City Clerk, shall constitute service on the City. *No other City official or employee may accept service of a summons and/or complaint unless such official or employee is specifically named in the lawsuit*, in which event such City official or employee shall immediately deliver a copy of such process to the City Clerk.

(Emphasis added.)

Thus, under the Port Angeles Municipal Code, service on a designated agent of the mayor or city manager, whether during normal office hours or otherwise, is not sufficient. Although during the COVID-19 pandemic the Washington Supreme Court did permit and require remote service for civil matters in some cases, it still required in-person service and compliance with the statute for initial service of process to establish personal jurisdiction. Fifth Revised & Extended

---

[3] Cities generally have broad authority to enact ordinances, so long as they are not in conflict with general laws. *Cannabis Action Coal. v. City of Kent*, 183 Wn.2d 219, 225, 351 P.3d 151 (2015). Specifically, an ordinance is valid " 'unless: (1) the Ordinance conflicts with some general law; (2) the Ordinance is not a reasonable exercise of the [local government's] police power; or (3) the subject matter of the Ordinance is not local.' " *Id.* at 225-26 (alteration in original) (quoting *Weden v. San Jan County*, 135 Wn.2d 678, 692-93, 958 P.2d 273 (1998)). Under this test, there is a presumption of constitutionality. *Id.* at 226. Thus, although PAMC 2.76.020 differs from RCW 4.28.080(2), it is a valid exercise of the city's local authority and therefore controlling here regarding service of process upon the city.

No. 58257-1-II

Ord. Regarding Ct. Operations, No. 25700-B-658, *In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency* (Wash. Feb. 19, 2021) https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/25700-B-658.pdf [https://perma.cc/F2PD-LEXX].

"When a statute designates a particular person or officer upon whom service of process is to be made in an action against a municipality, no other person or officer may be substituted." *Meadowdale Neighborhood Comm. v. City of Edmonds*, 27 Wn. App. 261, 264, 616 P.2d 1257 (1980). Under *Meadowdale*, strict compliance with the governing provision for service, whether that be a statute or a municipal ordinance, is a prerequisite to the court acquiring personal jurisdiction over a city. *Id.* at 267. "[A]ctual notice, standing alone, is insufficient" to bring a city under a court's jurisdiction. *Id.* at 268; *Landreville v. Shoreline Cmty. Coll. Dist. No. 7*, 53 Wn. App. 330, 332, 766 P.2d 1107 (1988).

When a defendant raises a defense of insufficient service of process, the plaintiff has the initial burden of proof to establish a prima facie case of proper service. *Scanlan*, 181 Wn.2d at 847. The defendant must then show that service was improper by clear and convincing evidence. *Id.*

B. Application

Young argues that the person who met Unger's process server in the lobby of city hall was a " 'designated agent', during business hours" of the city manager and, thus, service was proper under RCW 4.28.080(2). Br. of Appellant at 4. Young later contends, however, that the person with whom the summons and complaint were left was a " 'stand in' " for the designated agent, and that the service in this case should be considered " 'substitute' service." *Id.* at 6, 8. Young also

8

argues, seemingly in the alternative, that the service in this case "substantially complied" with RCW 4.28.080(2) because COVID-19 restrictions made it impossible to serve anyone other than the person the City sent out to receive the summons and complaint. *Id.* at 3. For these propositions, Young relies on inapposite case law that does not deal with service on a municipality.[4]

The City responds that PAMC 2.76.020 only allows service of process to be made upon the mayor, city manager, city clerk, or city official or employee specifically named in the lawsuit. The City points out that Unger's process server's belief that the administrative assistant at the city was a person authorized to accept service is not sufficient under *Meadowdale*, which held that " '[w]hen a statute [or ordinance] designates a particular person or officer upon whom service of process is to be made in an action against a municipality, no other person or officer may be substituted.' " Br. of Resp't at 6-8 (quoting *Landreville*, 53 Wn. App. at 332). Therefore, the City contends that service made upon the city manager's administrative assistant was insufficient as a matter of law. Because such process was insufficient, the City argues that Young never obtained personal jurisdiction over the City in this action and thus, the trial court's order granting summary judgment dismissal was proper. We agree with the City.

Case law makes clear that service upon a municipality requires strict compliance with the applicable service statutes and ordinances. *See Nitardy v. Snohomish County*, 105 Wn.2d 133, 134-35, 712 P.2d 296 (1986); *Landreville*, 53 Wn. App. at 332; *Meadowdale*, 27 Wn. App. at 264-65;

---

[4] Young relies on *Lee v. Barnes*, 58 Wn.2d 265, 267, 362 P.2d 237 (1961), *Thayer v. Edmonds*, 8 Wn. App. 36, 41-42, 503 P.2d 1110 (1972), and *Wichert v. Cardwell*, 117 Wn.2d 148, 812 P.2d 858 (1991), none of which are applicable to this case.

*Davidheiser v. Pierce County*, 92 Wn. App. 146, 153-55, 960 P.2d 998 (1998);.[5] In *Landreville*, as is the case here, the process server left a copy of the plaintiff's summons and complaint with an administrative assistant of the attorney general, even though the proper recipient for service of process under the controlling statute was only the attorney general or an assistant attorney general. 53 Wn. App. at 331. There, Division One of this court, held that because the service statute specified that service could only be made upon the attorney general or an assistant attorney general, leaving the summons and complaint with an administrative assistant was insufficient to acquire personal jurisdiction over the State. *Id.* at 331-32. *See also Meadowdale*, 27 Wn. App. at 265 (holding that service upon a mayor's secretary was insufficient when serving a municipality because "strict compliance is required with statutes naming particular persons upon whom service of process is to be made in actions against municipalities.").

Similarly, here Young's process server left Young's summons and complaint with the city manager's administrative assistant, although only the city manager, mayor, or city clerk could accept service. Although this service would have complied with RCW 4.28.080(2) if the administrative assistant was a designated agent of either the mayor or the city manager (and service was made during normal business hours), PAMC 2.76.020 does not allow service whatsoever on a designated agent unless that person is a city employee or official who is specifically named in the lawsuit. Thus, Young's service was insufficient, and he failed to acquire personal jurisdiction over the City.

---

[5] *See also* 17 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 49:36 (3d ed. 2022); 56 AM. JUR. 2D *Municipal Corporations, Counties, and Other Political Subdivisions* § 646 (2020) (both treatises cited by the courts in some of the cases above).

Additionally, although Young raised arguments regarding substantial compliance, particularly in light of COVID-19 restrictions, courts have held that "the doctrine of substantial compliance is inapplicable when the issue is whether service of process has been valid so as to subject a municipality to the court's jurisdiction." *Meadowdale*, 27 Wn. App. at 264. Moreover, unlike in *Wichert v. Cardwell*, on which Young relies, where substitute service against an overnight resident of the defendant's house was sufficient, here, the defendant was a municipality subject to RCW 4.28.080(2) and substitute service was not permitted. 117 Wn.2d 148, 152, 812 P.2d 858 (1991); *Meadowdale*, 27 Wn. App. at 264; *Landreville*, 53 Wn. App. at 332. *See also* PAMC 2.76.020.

Therefore, we hold that the trial court did not err in granting the City's motion for summary judgment and dismissing Young's lawsuit because Young's service of process upon the City was insufficient and, therefore, the trial court did not have personal jurisdiction over the City.

CONCLUSION

We affirm the trial court's grant of summary judgment and the dismissal of Young's lawsuit.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 58257-1-II

CRUSER, C.J.

We concur:

LEE, J.

CHE, J.

12